LEIGH GODDARD, NSBN 6315
JESSICA WOELFEL, NSBN 11885
MCDONALD CARANO WILSON LLP
100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
Attorneys for Plaintiff,
*Nevada Controls, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NEVADA CONTROLS, LLC., a Nevada Limited Liability Company, | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| vs. | (1) BREACH OF CONTRACT<br>(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
| WIND PUMP POWER, LLC., a Kansas Limited Liability Company, SUNFLOWER WIND, LLC, a Kansas Limited Liability Company; DAN RASURE, an individual, | (3) DECLARATORY RELIEF – ALTER EGO (DAN RASURE)<br>(4) DELCARATORY RELIEF – ALTER EGO (SUNFLOWER WIND)<br>(5) UNJUST ENRICHMENT |
| Defendants. | (6) FRAUD<br>[28 U.S.C. § 1332]<br>**JURY TRIAL DEMANDED** |

Plaintiff NEVADA CONTROLS, LLC, a Nevada Limited Liability Company, by and through its attorneys of record Leigh Goddard, Jessica Woelfel, and McDonald Carano Wilson LLP, allege and complain as follows:

## JURISDICTION

1. This Court has jurisdiction of this action under 28 U.S.C. Section 1332 because there is complete diversity of citizenship between the parties and the amounts in controversy exceed $75,000.00.

## PARTIES AND VENUE

### PARTIES

2. Plaintiff Nevada Controls, LLC is, and at all relevant times herein was, a limited liability company formed in Nevada, with its principal place of business in Carson City, Nevada. Nevada Controls is, and at all relevant times herein was, duly qualified to do business in all counties of Nevada.

3. Upon information and belief, Defendant Wind Pump Power, LLC ("WPP") is, and at all relevant times herein was, a limited liability company formed in Kansas, with its principal place of business in Goodland, Kansas. Upon information and belief, WPP is owned by Dan Rasure.

4. Upon information and belief, Defendant Sunflower Wind, LLC ("Sunflower Wind") is, and at all relevant times herein was, a limited liability company formed in Kansas, with its principal place of business in Goodland, Kansas. Upon information and belief, Wind Pump Power is also known as "Sunflower Wind, LLC."

5. Defendant Dan Rasure ("Rasure") is, and at all relevant times herein was, an individual residing in Goodland, Kansas.

6. Nevada Controls is informed and believes and on that basis allege that Defendants, and each of them, were at all times relevant herein the agent, servant, employee, officer, director, joint venture and/or partner, parent, affiliate, subsidiary, successor-in-interest, related entity, or alter-ego of each of the other defendants and, in doing the acts alleged hereinafter, Defendants, and each of them, were acting within the scope of authority conferred upon that party by consent, approval and/or ratification whether said authority was actual or apparent.

7. Nevada Controls is informed and believes and on that basis alleges that there exists such a unity of interest between Defendants WPP and Rasure, that Rasure is, in fact, an alter ego of WPP, and that Rasure should be declared and adjudged as such and that any judgment awarded against WPP should be jointly and severally enforceable against Rasure.

8. Nevada Controls is informed and believes and on that basis alleges that there exists such a unity of interest between Defendants WPP and Sunflower Wind, that Sunflower Wind is, in fact, an alter ego of WPP, and that Sunflower Wind should be declared and adjudged as such and that any judgment awarded against WPP should be jointly and severally enforceable against Rasure.

9. Venue is proper in this Court under 28 U.S.C. Section 1391 as there is only one official district for Nevada, a substantial part of the events or omissions giving rise to Nevada Controls' claims occurred in this jurisdiction and Nevada Controls is a Nevada LLC with its principal place of business in Carson City, Nevada.

## **BACKGROUND FACTS**

10. Nevada Controls is an engineering and contracting firm that, among other things, provides system design, foundation construction, procurement and assembly of wind turbines.

11. In June 2011, Nevada Controls was seeking a 100 kilowatt (kW) wind turbine for an installation project near Austin, Nevada.

12. In June 2011, Nevada Controls had a telephonic meeting with Dan Rasure to discuss the potential purchase and installation of ten wind turbines for the Austin project. Nevada Controls explained that they needed a turbine that would reach rated power at approximately 28 mph. Mr. Rasure stated that WPP had a product that could meet these specifications.

13. On June 27, 2011, Nevada Controls and WPP signed a "Mutual Non-Disclosure Agreement and Confidentiality Agreement" to protect WPP's intellectual property and access to Nevada Controls' customers while the parties discussed the possibility of working together. The Non-Disclosure Agreement notes that WPP is also known as Sunflower Wind, LLC.

14. On July 29, 2011, Dan Rasure travelled to Carson City, Nevada to meet with Nevada Controls. During Mr. Rasure's meeting with Nevada Controls, the parties came to a conceptual agreement regarding the Austin project. WPP agreed to obtain certification for WPP's "WPP-100" hydraulic wind turbine such that the turbines would be recognized and accepted by NV Energy d/b/a Sierra Pacific Power Co. WPP further agreed to submit the proper certification paperwork. With the assurance that WPP would be obtain certification, the parties engaged in negotiations for the purchase and installation of ten "WPP-100" wind turbines.

15. The parties signed a Wind Turbine Purchase Agreement ("Agreement") on October 17 and October 18, 2011. A true and correct copy of the Agreement is attached hereto as "Exhibit A."

16. Pursuant to the terms of the Agreement, and in anticipation of the Agreement being finalized, on September 16, 2011, Nevada Controls advanced $30,000 to WPP for an exclusive license to sell and market WPP's wind turbines in the State of Nevada.

17. Pursuant to the terms of the Agreement, on October 13, 2011, Nevada Controls paid WPP $48,000 for the purchase and installation of three helical screw foundations for the first three of ten foundations at a site near Austin, Nevada ("the Austin project").

18. WPP did not install the foundations or provide adequate materials as required by the Agreement.

19. Pursuant to the terms of the Agreement, on October 24, 2011, Nevada Controls paid WPP $84,000 for the purchase and installation of seven helical screw foundations to complete the Austin project. Some of the foundation materials were delivered to the site of the Austin Project on or around November 15, 2011, however, the foundation materials were defective and WPP was unable to install the materials.

20. In December 2011, Mr. Rasure advised Nevada Controls that WPP needed additional funds to purchase the blades for the wind turbines and to coat the blades. The parties thereafter signed an Addendum 1 to Wind Turbine Purchase Agreement ("Addendum") on December 7, 2011, in which Nevada Controls agreed to advance certain sums to WPP so that

WPP could perform its obligations as provided in the Agreement. A true and correct copy of the Addendum is attached hereto as "Exhibit B."

21. Pursuant to the terms of the Addendum, Nevada Controls advanced WPP $140,000 on December 7, 2011. Mr. Rasure advised Nevada Controls that he was going to purchase wind turbine blades, and told Nevada Controls to rent a location to store and coat the blades. In response to WPP's request, Nevada Controls immediately rented a storage area to provide workspace for the coating of the blades.

22. On December 12, 2011, Mr. Rasure told Nevada Controls via email that he was picking up the blades in Birds Landing, California on December 13, 2011. As of the date of this complaint, no blades have ever been delivered to Nevada Controls and WPP has failed to return phone calls and email inquiries from Nevada Controls requesting information about the blades.

23. On December 15, 2011, Mr. Rasure was seen at the Austin Project jobsite collecting and removing his equipment, without notice to Nevada Controls that he was vacating the job site.

24. Pursuant to the terms of the Addendum, ten sets of foundation helical piers and complete foundations, with associated plans prepared by a Nevada engineer were to be completed by December 20, 2011. To date, WPP has not provided the foundation piers, the completed foundations, or the required plans.

25. Pursuant to the terms of the Addendum, if the foundations are not installed by December 20, 2011, WPP must refund $70,000 of the foundation payment made by Nevada Controls by January 15, 2012. Pursuant to the terms of the Addendum, an additional $30,000 is to be refunded by WPP by January 30, 2012. Nevada Controls has not received either of the required refunds.

26. Pursuant to the terms of the Addendum, WPP must submit its certification application to California Energy Commission, NYSERDA, Oregon Energy Trust and American Wind Energy Association by December 23, 2011. The Addendum further provides that if WPP does not submit the applications for certification that WPP will refund the $140,000 advance payment, plus the $30,000 license fee paid by Nevada Controls. To date, no certification

5

paperwork has been submitted. Accordingly, the $170,000 was to be refunded to Nevada Controls by January 31, 2012. To date, no such refund has been made.

### FIRST CAUSE OF ACTION

(Breach of Contract – Damages)

(Against WPP)

27. Nevada Controls repeats and realleges each and every allegation set forth in paragraphs 1 through 26 as though fully set forth herein.

28. On or about October 17, 2011, Nevada Controls and WPP executed the Agreement, which is valid and binding.

29. On December 7, 2011, Nevada Controls and WPP executed the Addendum to the Agreement, which is valid and binding.

30. To date, Nevada Controls has fully performed all conditions, covenants, and promises under the Agreement and Addendum.

31. WPP has breached the Agreement and Addendum by, among other things, failing to timely install the helical screw foundations at all ten sites, install three complete foundations at all three sites, provide the necessary certification, provide functioning wind turbines, and obtain and deliver blades for the wind turbines.

32. Defendant has also breached the Agreement and Addendum by failing to refund the sums outlined in the Addendum by January 31, 2012.

33. As a result of Defendant's breach of the Agreement and Addendum, Nevada Controls has suffered special damages in an amount in excess of $300,000, for out of pocket costs, lost profits and other foreseeable damages due to Defendants' breach.

34. Nevada Controls has been forced to retain counsel to pursue this action and enforce the Agreement and Addendum and has incurred attorneys' fees as a result of Defendants' above-described actions, entitling it to an award of reasonable attorneys' fees and costs incurred in this action.

## SECOND CAUSE OF ACTION

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

(Against WPP)

35. Nevada Controls repeats and realleges each and every allegation set forth in paragraphs 1 through 34 as though fully set forth herein.

36. The Agreement contains an implied covenant of good faith and fair dealing by which Defendant promised to deal with Nevada Controls in good faith. Specifically, the covenant of good faith and fair dealing required Defendant to fairly, honestly, and reasonably perform the terms and conditions of its Agreement with Nevada Controls and to not act to deprive Nevada Controls of the benefits of the Agreement.

37. The acts and omissions of Defendant alleged herein breached the covenant of good faith and fair dealing. Specifically, Defendant failed to live up to their obligation to provide and install helical screw foundation sets, three complete foundations and wind turbines, as expressly provided in the Agreement. Defendant additionally failed to refund the sums outlined in the Addendum, which terms were expressly negotiated to provide Nevada Controls with protection to move the Austin project forward. Defendant has failed to perform despite the express terms of the Agreement.

38. As a result of the conduct set forth above, Nevada Controls was denied the benefits of the contract and has been damaged thereby in an amount to be proven at trial.

39. Nevada Controls has been forced to retain counsel to pursue this action and has incurred attorneys' fees as a result of Defendants' actions.

## THIRD CAUSE OF ACTION

(Declaratory Relief – Alter Ego)

(Defendant Dan Rasure)

40. Nevada Controls repeats and realleges each and every allegation set forth in paragraphs 1 through 39 as though fully set forth herein.

41. Nevada Controls seeks a declaratory order that Dan Rasure is the alter ego of WPP.

42. On information and belief, WPP is completely dominated and wholly governed by Dan Rasure such that there is a unity of interest and ownership as to WPP such that Dan Rasure is inseparable from WPP.

43. On information and belief, WPP and Dan Rasure are inseparable from one another due to the degree of interest and ownership. On information and belief, WPP is deliberately undercapitalized, and has been since its formation. Mr. Rasure informed Nevada Controls during the Austin Project that WPP was undercapitized and sought payment advances from Nevada Controls so that it could meet its obligations under the Agreement and Addendum. On information and belief, Dan Rasure treats the corporate assets of WPP as his own.

44. Adherence to the fiction of WPP as a separate legal entity from Dan Rasure would, under the circumstances, sanction a fraud and/or promote injustice. Dan Rasure has total control over WPP and is the sole member of the LLC.

45. During the Austin Project, Mr. Rasure represented that he would bring a crew with him from Kansas to assist him in installing the helical foundations at the Austin Project site. Mr. Rasure did not bring a crew to assist him, but was the only person from WPP who worked on any aspect of the Austin Project. Upon information and belief, WPP has no employees.

46. Negotiations regarding the terms and conditions of the contract took place with Dan Rasure and negotiations regarding advance payments were made directly to Dan Rasure. Accordingly, for the purposes of this action and Nevada Controls' claims herein, any separate corporate existence of WPP should be disregarded.

47. Accordingly, Nevada Controls respectfully requests a declaratory judgment of the respective rights and obligations of the parties; specifically, that Dan Rasure is the alter-ego of WPP.

48. Nevada Control has been required to retain the services of counsel to prosecute this matter, and as such, is entitled to an award of its costs and reasonable attorneys' fees incurred herein.

## FOURTH CAUSE OF ACTION

(Declaratory Relief – Alter Ego)

(Defendant Sunflower Wind, LLC)

49. Nevada Controls repeats and realleges each and every allegation set forth in paragraphs 1 through 48 as though fully set forth herein.

50. Nevada Controls seeks a declaratory order that Sunflower Wind is the alter ego of WPP.

51. Upon information and belief, Sunflower Wind is owned by Dan Rasure.

52. Nevada Controls originally spoke with Dan Rasure in his capacity as owner of Sunflower Wind when inquiring about hydraulic wind turbines for the Austin Project. Mr. Rasure represented that WPP and Sunflower Wind were related companies. WPP has represented in its written material that it is "also known as" Sunflower Wind, LLC. Accordingly, upon information and belief, WPP is completely dominated and wholly governed by Sunflower Wind such that there is a unity of interest and ownership as to WPP such that Sunflower Wind is inseparable from WPP.

53. On information and belief, WPP and Sunflower Wind are inseparable from one another due to the degree of interest and ownership. On information and belief, WPP is deliberately undercapitalized, and has been since its formation. Mr. Rasure informed Nevada Controls during the Austin Project that WPP was undercapitalized and sought payment advances from Nevada Controls so that it could meet its obligations under the Agreement and Addendum. On information and belief, Sunflower Wind treats the corporate assets of WPP as its own.

54. According to the Kansas Secretary of State website, the registered business address for both WPP and Sunflower Wind is 6488 Road 16 in Goodland, Kansas. Dan Rasure is the listed registered agent for both WPP and Sunflower Wind.

55. Adherence to the fiction of WPP as a separate legal entity from Sunflower Wind would, under the circumstances, sanction a fraud and/or promote injustice. Sunflower Wind has total control over WPP, and has made representations that it and WPP are one and the same.

1  Accordingly, for the purposes of this lawsuit and Nevada Controls' claims herein, any separate
2  corporate existence of WPP should be disregarded.

3  56.  Accordingly, Nevada Controls respectfully requests a declaratory judgment of the
4  respective rights and obligations of the parties; specifically, that Sunflower Wind is the alter-ego
5  of WPP.

6  57.  Nevada Controls has been required to retain the services of counsel to prosecute
7  this matter, and as such, is entitled to an award of its costs and reasonable attorneys' fees
8  incurred herein.

## FIFTH CAUSE OF ACTION

(Unjust Enrichment)

(All Defendants)

58.  Nevada Controls repeats and realleges each and every allegation set forth in paragraphs 1 through 57 as though fully set forth herein.

59.  Defendants and each of them jointly and severally, through their wrongful conduct alleged above, have reaped benefits in the form of advance payments made by Nevada Controls. In obtaining these benefits and reaping profits from the money and other property of Nevada Controls, Defendants, and each of them, have injured Nevada Controls by causing it substantial monetary losses, all of which were not only foreseeable but were the intended consequences of Defendants' actions.

60.  Based on the facts as alleged herein and as proven at trial, in equity and good conscience, it would be unconscionable and otherwise unjust for Defendants, and each of them, to enrich themselves at Nevada Controls' expense.

61.  As a proximate result of the wrongful conduct of Defendants as alleged herein, Nevada Controls has been damaged in an amount according to proof at trial, including interest, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION

(Fraud)

(All Defendants)

62. Nevada Controls repeats and realleges each and every allegation set forth in paragraphs 1 through 61 as though fully set forth herein.

63. On multiple occasions between June 2011 and October 2011, Dan Rasure orally represented to Everett Jesse from Nevada Controls that he could provide Nevada Controls with 100 kW hydraulic wind turbines with a cut-in wind speed of 11 mph, and reaching rated power at a wind speed of 27 mph.

64. Mr. Rasure also provided Mr. Jesse with his a diagram of his advertised power curve data which supported his claim that he could provide a 100 kW hydraulic wind turbines with a cut-in wind speed of 11 mph, and rated power at a wind speed of 27 mph.

65. At the time Mr. Rasure made these representations, he knew that Nevada Controls required a turbine that could meet these specifications. At the time Mr. Rasure made these representations to Mr. Jesse, he knew WPP's wind turbines could not meet these specifications with regularity, but made such statements with the intent to induce Nevada Controls into entering into a contract with him and his company.

66. In reliance on Mr. Rasure's representations regarding the WPP-100 power curve, Nevada Controls did not pursue alternative wind turbines that could meet its requirements, but entered into a contract with WPP to provide turbines and installation for the Austin project.

67. In reliance on Mr. Rasure's representations regarding the WPP-100 power curve, Nevada Controls paid WPP substantial sums of money as set forth herein above.

68. On December 8, 2011, Mr. Rasure forwarded Mr. Jesse information data regarding the WPP-100 power curve. This data did not support the power curve information orally represented to Mr. Jesse by Mr. Rasure or the information included in Mr. Rasure's advertisements. Rather, the data was clear that the WPP-100 could not meet Nevada Controls' requirements.

69. On December 13, 2011, Mr. Jesse sent Mr. Rasure an email stating that the data provided did not support the advertised power curve and asked if there was other data that demonstrated a better power curve. Mr. Rasure never responded to this email.

70. As a result of Mr. Rasure's misrepresentation of the WPP-100's power curve, Nevada Controls did not purchase alternative wind turbines that would have met its requirements.

71. As a result of Mr. Rasure's misrepresentation of the WPP-100's power curve, Nevada Controls was unable to complete the Austin project in a timely manner, resulting in Nevada Controls suffering substantial damages, including its out of pocket costs, lost profits, and damage to its professional reputation.

72. Nevada Controls has been required to retain the services of counsel to prosecute this matter, and as such, is entitled to an award of its costs and reasonable attorneys' fees incurred herein.

WHEREFORE, Nevada Controls prays for relief as follows:

1. For Declaratory Relief as set forth above;

2. For judgment in favor of Nevada Controls in an amount in excess of $75,000;

3. For an award to Nevada Controls of its costs and reasonable attorneys' fees; and

4. For such other and further relief that the Court deems just and proper.

DATED this 2nd day of February, 2012.   McDONALD CARANO WILSON LLP

By /s/ Jessica Woelfel
Jessica Woelfel, NSBN 11885
100 West Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
*Attorneys for Plaintiff*

326650v.2