# EXHIBIT "B"

# EXHIBIT "B"

## SWENSON, BREWER & LONG, CHARTERED

ATTORNEYS AT LAW

DANA BREWER

DONNA J. LONG

JENNIFER L WICKERSHAM,
    Associate

S. RICHELLE KUEKER,
    Associate

DAVID D. SWENSON, of counsel
(Admitted in Kansas and Arkansas)

Toll Free: (800) 499-1787
Email: sblattys@att.net

613 Washington Street
P. O. Box 549
Concordia, Kansas 66901-0549
(785) 243-3790
FAX (785) 243-5018

719 Fifth Street
Clay Center, Kansas 67432
(785) 632-2272
FAX: (785) 632-2560

April 5, 2013

Mark Goodman
Goodman Law Center, P.C.
348 Mill Street
Reno, Nevada 89501

    Re:   Nevada Controls, LLC vs. Wind Pump Power LLC, Sunflower Wind LLC and Dan Rasure;
           U.S. District Court Case No. 3:12-CV-00068-HDM-VPC.

Dear Mr. Goodman:

    Our offices represent Cynthia Strnad and Jill Strnad, members and creditors of Sunflower Wind, LLC. Enclosed please find a copy of our Demand for Actions demanding that your client, Dan Rasure, as the manager and officer of Sunflower Wind LLC, who undertook the responsibility of winding up the affairs of Sunflower Wind LLC, defend Sunflower Wind LLC in the above referenced action.

    I assume the law in Nevada is similar to the law in Kansas. Notwithstanding that there may have been a vote by the membership to dissolve the LLC, Kansas statutes require the company management to wind up the affairs of the company, including discharging or making reasonable provision for the company's liabilities. During the meeting at which the vote to dissolve the company was taken, Mr. Rasure advised the membership that he would be handling the final affairs of the company. As the person approved by the members to do so, he has the authority, and I believe, obligation, to defend lawsuits against the company. See K.S.A. 17-76,118.

    I am also enclosing copies of pertinent pages from Mr. Rasure's deposition taken on February 11th and 12th of this year, wherein he states under oath that he is currently

defending Sunflower Wind LLC in the Nevada Controls action. However, I see by the Joint Interim Status Report filed a month prior to Mr. Rasure's testimony, that you have indicated to the Court that Sunflower Wind will no longer present a defense to the Complaint. It also appears that Sunflower Wind has been allowed to fall into default with regard to responding to discovery requests.

As I understand the facts of the action, the only link that Sunflower Wind has to the Nevada Controls' action is that Wind Pump Power is referred to as aka Sunflower Wind, LLC in the Mutual Non-Disclosure and Confidentiality Agreement between the parties. According to Mr. Rasure's testimony on Page 237 of his deposition, he does not take the position that he is the owner of Sunflower Wind. In fact, there are at least twenty-five (25) shareholders of Sunflower Wind.

It appears that Mr. Rasure's decision to cease defending Sunflower Wind is motivated by self interest. As I indicated above, Sunflower Wind's involvement in this matter is tenuous at best, and it should have been dismissed from the action some time ago. If Mr. Rasure fails to defend on behalf of Sunflower Wind LLC, this matter will be brought to the attention of the District Court of Reno County, Kansas, wherein the issues regarding Mr. Rasure's disposition of Sunflower Wind assets are being addressed, and we will seek the appointment of a liquidating trustee to appropriately address the claims against the company and wind up the affairs of Sunflower Wind according to the statues and the Operating Agreement.

Yours very truly,

SWENSON, BREWER & LONG,
CHARTERED

By
David D. Swenson

DDS/rc
Encl.
pc:   Leigh Goddard
      McDonald Carano Wilson LLP
      100 West Liberty Street, 10th Floor
      P O Box 2670
      Reno, Nevada 89505-2670

      Cynthia Strnad
      Jill Strnad
      Glenn Young

David D. Swenson
Kansas Supreme Court No. 07728
SWENSON, BREWER & LONG,
CHARTERED
613 Washington Street
P.O. Box 549
Concordia, Kansas 66901-0549
Phone: (785) 243 3790
sblattys@att.net
Attorneys for Plaintiffs Cynthia Strnad and Jill Strnad

## IN THE DISTRICT COURT OF RENO COUNTY, KANSAS

| | |
|---|---|
| CYNTHIA STRNAD and<br>JILL STRNAD,<br><br>       Plaintiffs,<br><br>vs.<br><br>SUNFLOWER WIND LLC,<br>DANIEL RASURE and<br>3405 BUILDING LLC,<br><br>       Defendants. | Case No. 2012 CV 202 |

### DEMAND FOR ACTIONS

To: Daniel Rasure, Resident Agent, CEO and Manager
   Sunflower Wind, LLC
   6488 Road 16
   Goodland, Kansas 67735

SWENSON,
BREWER &
LONG,
CHARTERED
613 WASHINGTON
STREET
P. O. BOX 549
CONCORDIA,
KANSAS
66901
(785) 243-3790

1

Cynthia Strnad and Jill Strnad, Creditors and Members of Sunflower Wind, LLC, demand that Daniel Rasure, Manager, controlling Member and CEO of Sunflower Wind, LLC, do the following:

1. Resume and continue to defend Sunflower Wind, LLC against the Complaint filed by Nevada Controls, LLC, a Nevada Limited Liability Company, against Wind Pump Power, LLC, Sunflower Wind LLC and Dan Rasure, individually, in the United States District Court, District of Nevada, Case No: 3:12-CV-00068-HDM-VPC;

2. Respond in a timely fashion to Plaintiff Nevada Control LLC's discovery requests; and

3. Seek to obtain a dismissal of all of such Plaintiffs' claims against Sunflower Wind, LLC in said matter.

Dated April 5, 2013.

David D. Swenson, Attorneys for
Cynthia Strnad and Jill Strnad

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2013, I served a copy of the above and foregoing Demand for Actions on Daniel Rasure, by depositing a copy of the same in the United States mail at Concordia, Kansas, postage prepaid, addressed to the following:

Daniel Rasure
6488 Road 16
Goodland, Kansas 67735

SWENSON,
BREWER &
LONG,
CHARTERED
613 WASHINGTON
STREET
P. O. BOX 549
CONCORDIA,
KANSAS
66901
(785) 243-3790

2

Mark Goodman
Goodman Law Center, P.C.
348 Mill Street
Reno, Nevada 89501

Glenn D. Young, Jr.
YOUNG, BOGLE, MCCAUSLAND,
WELLS & BLANCHARD, P.A.
100 North Main, Suite 1001
Wichita, Kansas 67202-1322

and mailed the original to the office of the Clerk of the Reno County District Court.

David D. Swenson
Attorney for Cynthia Strnad and Jill Strnad

SWENSON,
BREWER &
LONG,
CHARTERED
613 WASHINGTON
STREET
P. O. BOX 549
CONCORDIA,
KANSAS
66901
(785) 243-3790

3

Case 3:12-cv-00068-HDM-VPC   Document 60-2   Filed 05/03/13   Page 7 of 9

DANIEL PAUL RASURE - DEPO OF 2-11-13 & 2-12-13   OWENS, BRAKE & ASSOCIATES   STRNAD V SUNFLOWERWIND, et al & STRNAD V GT WIND, INC

1

IN THE DISTRICT COURT OF RENO COUNTY, KANSAS

CYNTHIA STRNAD and
JILL STRNAD,
          Plaintiffs,
vs.                        Case No. 2012 CV 202
SUNFLOWER WIND, LLC,
DANIEL RASURE and
3405 BUILDING, LLC,
          Defendants.

---

IN THE DISTRICT COURT OF SHERMAN COUNTY, KANSAS

JILL STRNAD,
          Plaintiff,
vs.                        Case No. 2012 CV 20
GT WIND, INC.,
          Defendant.

D E P O S I T I O N

The deposition of DANIEL PAUL RASURE, taken on behalf of the Plaintiffs pursuant to the Kansas Code of Civil Procedure and Notice before:

    Debra L. Brightbill, C.S.R.
    OWENS, BRAKE & ASSOCIATES
    234 North 7th, Suite E
    Salina, Kansas 67401

a Certified Shorthand Reporter of Kansas, at 613 Washington Street, Concordia, Kansas, on the 11th and 12th days of February, 2013, starting at 10:15 a.m.

Case 3:12-cv-00068-HDM-VPC   Document 60-2   Filed 05/03/13   Page 8 of 9

DANIEL PAUL RASURE - DEPO OF 2-11-13 & 2-12-13   OWENS, BRAKE & ASSOCIATES   STRNAD V SUNFLOWERWIND, et al & STRNAD V GT WIND, INC

**Page 234**

MR. SWENSON: That will be number 14, I guess.

Q. What form is the log maintained?
A. It's a written log. I could also provide it as an Excel document.
Q. Does Wind Pump Power have a bank account?
A. It does.
Q. And where does Wind Pump Power bank?
A. First National Bank, in Goodland.
Q. Has it ever banked anywhere else?
A. No.
Q. I assume you have bank statements for that account?
A. I can find those.
Q. Is there more than one account?
A. No.

MR. SWENSON: Okay, we'll request those bank statements. That will be number 15.

MR. YOUNG: The bank, again?

MR. SWENSON: Is First National Bank in Goodland, Wind Pump Power bank account statements.

MR. YOUNG: Right.

Q. Would those bank statements for Wind Pump Power also reflect any Sunflower liabilities that

**Page 235**

its paid?
A. Possibly so, but I'm not sure at this point.
Q. Does 3405 Building have a bank account?
A. It did, it does not currently.
Q. Are there bank statements for 3405 Building somewhere?
A. They can be requested.
Q. Okay.
A. I haven't found them yet.

MR. SWENSON: I'll request those, too, please.

A. Okay.

MR. SWENSON: That's No. 16, I guess.

Q. Would they reflect liabilities that were paid by 3405 Building on behalf of Sunflower Wind?
A. I believe they would reflect some payments.
Q. Have all the liabilities which were assumed under these agreements been paid by either GT Wind, 3405 Building or Wind Pump Power?
A. No.
Q. I'm sorry, I believe I asked, but I don't know that I got it.
    3405 Building does have a bank account

**Page 236**

somewhere?
A. It did, it does not currently.
Q. Doesn't anymore. Where was that bank account?
A. First National Bank, in Goodland.

(WHEREUPON, the reporter marked for identification Deposition Exhibit No. 29).

Q. I hand you what's been marked Rasure Deposition Exhibit No. 29, and ask you if you recognize what those documents are?
A. I do.
Q. And what is that?
A. May I confer with counsel on this document?
Q. Sure.

(WHEREUPON, an off the record discussion was had, after which the following:)

Q. Back on the record.
    I've handed you what's been marked Rasure Deposition Exhibit No. 29; do you recognize that?
A. I do.
Q. Okay. Is that -- what is that document?
A. It's a lawsuit between the Nevada

**Page 237**

Controls and Wind Pump Power, Sunflower Wind and myself, Dan Rasure.

MR. YOUNG: Now, at this time I'm going to interpose an objection to this document as being totally unrelated and irrelevant of any discoverable issues in this lawsuit. But with that --

MR. SWENSON: I will proceed.

MR. YOUNG: Yes.

Q. When was this lawsuit filed?
A. I believe February of 2012.
Q. Okay. So it is subsequent to the transfer of the assets from Sunflower Wind to Wind Pump Power?
A. It is.
Q. But it does show that Sunflower Wind is also a defendant in this lawsuit; is that correct?
A. It is, or it is currently.
Q. Have you on occasion referred to yourself as the owner, the owner as opposed to an owner of Sunflower Wind?
A. No.
Q. What is the current status of this lawsuit?
A. Ongoing.
Q. And what phase is it?

238

1 A. Discovery.
2 Q. Are you actively defending against it?
3 A. We are.
4 Q. And defending Sunflower Wind as well as
5 Wind Pump Power?
6 A. We are.
7 Q. Okay. Earlier we talked about some of
8 the other entities which you have an interest in.
9 Do you have an interest in a company called
10 Quixote Wind?
11 A. May I see the spelling?
12 Q. Q-U-I-X-O-T-E. Maybe I'm not saying that
13 the way --
14 A. Jill Strnad set that entity up as being a
15 potential landing spot for the turbine technology
16 when a license agreement was being discussed with
17 a -- with a new entity being formed with Rob Green
18 and Bob Brown.
19 Q. Is that entity still in existence, or
20 still functioning?
21 A. It's never had any assets, I believe it's
22 been forfeited.
23 Q. Okay. Goodland Grain, LLC; is that
24 another one of your companies?
25 A. Yes.

239

1 Q. Is that business currently operating?
2 A. The status has been forfeited, but it is
3 operating.
4 Q. Does this company also have some interest
5 in grain storage facilities?
6 A. It does.
7 Q. It's another, like the building, I guess
8 in Liberal, which GT Wind owns or, excuse me,
9 operates?
10 A. Yes.
11 Q. Another company called DTLM Equipment,
12 LLC; is that one of your companies?
13 A. It is. It was never used.
14 Q. Since --
15 A. May I clarify the record?
16 Q. Sure.
17 A. Those are companies that I own -- or,
18 yes.
19 Q. All of these are companies that you
20 owned?
21 A. Yes.
22 Q. Okay. Does anybody else have any
23 interest in these?
24 A. No.
25 Q. All right. Since the winding down of

240

1 Sunflower, I think is how you referred to it, in
2 March of 2011, how have you occupied your time?
3 A. I spent the majority of 2011 either
4 cleaning up -- cleaning up what had been created,
5 as well as working on a grain building in
6 Goodland, Kansas, and working with Nevada in the
7 latter half of 2011. I spent the first six weeks
8 of 2012 defending a criminal charge brought by
9 your client, or plaintiff, Jill Strnad. After
10 that point, until I was served at Catalyst
11 Management, I was working on private equity deals
12 with Catalyst Equity Group.
13 Q. And who is Catalyst Equity?
14 A. It's owned by Rob Green.
15 Q. Have you been employed by anybody since
16 the winding down, I guess, of Sunflower Wind?
17 A. Define employment.
18 Q. Actually receiving a salary or wages for
19 your work?
20 A. The LLC's, I didn't receive a -- receive
21 salaries, and the answer would be, no.
22 Q. Okay. When you say you're working on,
23 I've forgotten the term that you used, something
24 with Catalyst Equity, what types of things are you
25 working on?

241

1 A. Purchases of other -- purchases of
2 private entities.
3 Q. Would Catalyst Equity be a partner in
4 that, a financier, what would their role be?
5 A. It was variable. I personally owned the
6 portfolio that was being worked on, so if Catalyst
7 for some reason backed out of a deal that we had
8 gotten extremely far in, I maintained ownership of
9 that -- of that company portfolio.
10 Q. Okay. So the idea is that a company, you
11 would form a company with Catalyst Equity, and
12 they would purchase other businesses?
13 A. It was variable, based on the situation,
14 depending on how it would exist, or how it would
15 fit into existing platforms or new platforms.
16 Q. What kinds of companies are you talking
17 about?
18 A. Primarily manufacturing companies.
19 Q. And what would they manufacture?
20 A. A wide range of products.
21 Q. Okay. Something more than just wind
22 turbines?
23 A. Yes, I believe we only looked at one wind
24 turbine company.
25 Q. Were you still intending to use the wind